## FRANK KIMBERLY *v.* TOWN OF MADISON.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued November 6, 1940—decided January 10, 1941.

410

*Charles M. Lyman,* for the appellant (plaintiff).

*Stephen F. Dunn,* for the appellee (defendant).

ELLS, J. . The plaintiff is the owner of premises located in the westerly or East River section of Madison, lying within a triangle formed by Neck Road, its westerly branch, and the Boston Post Road. They are bounded on the northeast by the Post Road, south by the Neck Road, and west by the west branch of the Neck Road, and are about one half acre in area.

The zoning regulations involved were adopted in August, 1934, and establish certain districts "as described below and as are indicated on the zoning map which accompanies these regulations, which map and any amendments are declared to be a part thereof." The map thus referred to is not in evidence and there is no finding that it was ever filed. The plaintiff, seeking a declaratory judgment, alleged, among other things, uncertainty as to whether his land was within the area zoned for residence purposes. The defendant's answer pleaded that the property lies within the area.

The problem, therefore, is to establish the boundaries of the area described at length in the regulations, without the aid of the map referred to. We do not need to quote the description of the boundaries, except as they concern the immediate vicinity of the premises in question. The area is bounded on the south by Long Island Sound, on the east by the State Park

known as Hammonasset, on the north by a line run-
ning in general three hundrd feet north of and parallel
to the Post Road. As this line runs westerly and ap-
proaches the location in question it is described as
follows: "then continuing westerly three hundred feet
north of the north line of Boston Post Road to Neck
River, then crossing the Boston Post Road southerly
to follow the north line of Neck Road to a point rep-
resented by the extension of the westerly property line
of William H. Hoops." The parties are in disagree-
ment as to the meeting place of the line north of the
Post Road and the Neck River; whether the line then
turning southerly and crossing the Post Road follows
the line of Neck Road, or the line of the westerly
branch of Neck Road; the meeting place of that line
and the extension of the westerly line of William H.
Hoops. If this line follows the line of the westerly
branch, the plaintiff's premises are within the zoned
area; if it follows the line of Neck Road, they are to
the west, and outside, of the area.

The Post Road runs westerly toward these premises,
and at or about its junction with the west branch of
Neck Road, turns sweepingly to the northwest. The
finding locates Neck River as follows: "A short dis-
tance westerly of the west branch of the Neck Road
is the Neck River which crosses to the northerly side
of the Post Road and continues approximately one
hundred and twenty-five feet substantially parallel to
the west branch of the Neck Road and then turns
sharply to the east so as to run substantially parallel
to the Post Road for several hundred feet, turning
then again to the north." It is apparent that the line
three hundred feet north of the Post Road meets the
Neck River northerly of a point on the Post Road
substantially east of plaintiff's property.

The line then crosses the Post Road "southerly to

follow the north line of Neck Road." The trial court found the premises were bounded south by the Neck Road and west by the west branch of the Neck Road. There is no north line of the west branch; there is a line of the Neck Road which may fairly be described as the north line. The line running "southerly" across the Post Road does run southerly if it is to meet the latter line of Neck Road; it runs almost west if it is to meet a line of the west branch. Moreover, to run it in this way would produce an acute angle in the line in which would lie the plaintiff's property. The court has found that "Neck Road" is the highway to the south of the premises, and nearer the center of Madison, and that the fork is known as the west branch of Neck Road.

The next point to be established is the intersection of the north line of Neck Road with the extension of the westerly property line of William H. Hoops. The finding throws little light on this problem, for it refers to Hoops' property as located to the west and southwest of plaintiff's property and as shown on a map, Exhibit D. The map shows only a portion of the Hoops property, and reveals the course of the west line only in part. A line following the north line of Neck Road would apparently meet this property line, or its projection, a considerable distance southerly of the intersection with the Post Road. The compass points on Exhibit D are such as to indicate that it would not meet the line of the west branch.

The subordinate facts do not support the trial court's conclusion that the plaintiff's premises are within the zoned area. The finding does not furnish us with material to accurately establish the meeting with Hoops' westerly line extended, but upon the facts before us the only reasonable conclusion is that the zoning line is the north line of Neck Road, and that

the plaintiff's premises are immediately to the west of, and outside, the area.

The plaintiff's property not being within the zoned area, he is in no position to attack the validity of the zoning ordinance, and in so far as this case is concerned it is of no consequence how far the inhabitants of the town have relied upon that validity in creating new interests and erecting new buildings. The finding states that the inhabitants of the town and the plaintiff and his lessee have believed that the plaintiff's premises were within the area, but it fails to find that anybody's conduct has been affected by that belief. Because of a lack of finding of any prejudice to anyone from his failure to take steps previously to have determined the issue whether or not his property was within the zoned area, there is here no basis for an estoppel which would affect the plaintiff's situation. *National Transportation Co., Inc.* v. *Toquet,* 123 Conn. 468, 477, 196 Atl. 344. The defendant relies on *Coombs* v. *Larson,* 112 Conn. 236, 152 Atl. 297. There the estoppel was held to prevent an attack upon the zoning regulations, which, as we have pointed out, is not the situation here. The case is distinguished in *National Transportation Co., Inc.* v. *Toquet,* supra, upon substantially the same ground.

Prior to the bringing of this action the plaintiff and his lessee had sought permission from the zoning authority to alter the structure of the building. The application was denied, and no appeal was taken to the Superior Court. The defendant pleaded a waiver, claiming that the plaintiff had believed and acted upon the assumption that the regulations included his premises and took no action to the contrary until the institution of this suit. The trial court has found that the plaintiff and his lessee and agent believed his property was within the zoned area, in taking the steps

they did under the zoning regulations. He may merely have assumed that it was, for that purpose; he may have believed that it was, upon the basis of the scant means of information he then had. Under the circumstances discussed in the opinion it was impossible for him to know with any degree of certainty whether his premises were within the area. Only a court proceeding could establish that fact. "Where one lacks knowledge of a right there is no basis upon which a waiver of it can rest." *National Transportation Co., Inc.* v. *Toquet,* supra, 475. He did not relinquish a known right. He tried first to secure permission to alter the building—not to change the regulations. Failing in that, he brought this action to determine whether his property was in fact within the zoned area. A decision that it was not will not upset the zoning regulations and the action of others taken under them. Under the circumstances of this case, we hold that he was not estopped, and that he did not waive his right to bring this action for a declaratory judgment.

In view of our conclusion that the plaintiff's property was not within the area zoned for residence purposes, he has no interest in having an adjudication as to whether or not the development of business he proposes would be in violation of the zoning regulations and whether or not the zoning regulations are valid. Consequently it is not necessary to determine these questions. Practice Book, § 250(a).

There is error, and the case is remanded to the Superior Court with direction to enter judgment declaring that plaintiff's premises are not within the zoned area of the town of Madison.

In this opinion the other judges concurred.